**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(GREENBELT DIVISION)**

| | |
|---|---|
| **MARSHALL STRISIK**, an individual residing at 6503 Stoneham Road, Bethesda, Maryland 20817, <br><br> Plaintiff, <br><br> vs. <br><br> **MAPLE LEAF FINANCIAL, INC.**, located at 4350 East West Highway, #900, Bethesda, Maryland 20814, **KATHLEEN BIRRANE**, individually and in her representative capacity as General Counsel of Maple Life Financial, Inc., with an office at 4350 East West Highway, #900, Bethesda, Maryland 20814, and **NATHAN ARTHUR EVANS**, individually and in his representative capacity as President and CEO of Maple Life Financial, Inc., with an office at 4350 East West Highway, #900, Bethesda, Maryland 20814, <br><br> Defendants. | **COMPLAINT** <br><br> **Civil Action No.:** _____ |

Plaintiff Marshall Strisik, by and through his attorneys Kelley Drye & Warren LLP, as and for his Complaint against Defendants Maple Life Financial, Kathleen Birrane and Nathan Arthur Evans, alleges as follows:

**NATURE OF THE ACTION AND THE PARTIES**

1. This is an action against three Defendants ("Defendants"): Maple Life Financial, Inc. ("MLF" or the "Company"); Kathleen Birrane ("Birrane"), General Counsel of MLF; and Nathan Arthur Evans ("Evans"), President and CEO of MLF.

2. This is a case about a dedicated employee of MLF who was unlawfully discriminated against, retaliated against and discharged after he disclosed to his immediate

supervisor, Defendant Birrane, that he was an alcoholic and after he sought protected medical leave to obtain treatment for his alcoholism.

3. Plaintiff's claims include, among other items, unlawful discrimination, unlawful retaliation, and unlawful interference, in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 et seq., as amended, the Family and Medical Leave Act of 1993 (the "FMLA"), 29 U.S.C. § 2601 et seq., as amended, and Chapter 27 of the Montgomery County Code, Human Rights and Civil Liberties, § 27.1 et seq. (the "MCHRA").

4. Plaintiff Marshall Strisik ("Plaintiff" or "'Mr. Strisik") is a resident of Bethesda, Maryland with an address at 6503 Stoneham Road, Bethesda, Maryland 20817.

5. Defendant MLF is a business entity that maintains an office at 4350 East West Highway, #900, Bethesda, Maryland 20814.

6. Defendant Birrane is an officer and employee of MLF with a business address in Bethesda, Maryland, located at 4350 East West Highway, #900, Bethesda, Maryland 20814.

7. Defendant Evans is an officer and employee of MLF with a business address in Bethesda, Maryland, located at 4350 East West Highway, #900, Bethesda, Maryland 20814.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's claims pursuant to federal law, including without limitation the ADA, 42 U.S.C. § 12101 et seq., the FMLA, 29 U.S.C. § 2617, and 28 U.S.C. §§ 1331, 1343, 1367 and 2201.

9. This Court has supplemental jurisdiction over Plaintiff's MCHRA claims pursuant to 28 U.S.C. § 1367(a) as these claims form part of the same case and controversy.

10. Venue is proper in this district pursuant to federal law, including without limitation the ADA, 42 U.S.C. § 12101 et seq., the FMLA, 29 U.S.C. § 2617, and 28 U.S.C. § 1391.

11. Plaintiff filed a timely charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

12. Plaintiff requested a right to sue letter. On September 30, 2010, the EEOC issued a Notice of Right to Sue letter.

13. Plaintiff has satisfied all of the statutory prerequisites to filing this action with this Court.

14. Plaintiff seeks an award of appropriate relief.

## FACTS

15. Mr. Strisik was recruited and hired by MLF as Associate General Counsel on December 1, 2007. His immediate supervisor was MLF's General Counsel, Defendant Birrane.

16. As Associate General Counsel, Mr. Strisik reported directly to Defendant Birrane and was responsible for managing MLF's Compliance and Regulatory Affairs.

17. At the time of his hire, MLF's legal department comprised three (3) attorneys. Defendant Birrane was herself a new hire of MLF and began her job at MLF two (2) weeks prior to Mr. Strisik.

18. During the entire period of Mr. Strisik's employment with MLF, Defendant Birrane reported directly to Defendant Evans.

19. Defendant Birrane hired Plaintiff. Within the first 60 days of Plaintiff's hire, Defendant Birrane told Plaintiff that he and she were "like partners of a firm" and would "build the department together" from scratch.

20. Accordingly, in 2008, Mr. Strisik created job descriptions for various legal department positions and assisted Defendant Birrane in hiring various legal department staff.

21. Mr. Strisik was also responsible for supervising legal department staff members Matt Brown, Susan Chai and Joanna ("Asia") Miller.

22.     Mr. Strisik was qualified for his position with MLF.  He was and is an attorney licensed to practice law in the District of Columbia and Pennsylvania.  Mr. Strisik earned his law degree from Widener University, with honors in oral advocacy, followed thereafter by employment both as outside counsel at a private law firm and as in-house counsel for a major conglomerate of U.S. life insurance companies.

23.     In his first year of employment, Mr. Strisik established a track record of outstanding job performance.  He garnered the trust and respect of the organization and became the designated "go to" lawyer at MLF for daily legal and compliance advice and counsel.

24.     In early 2008, as a reward for Plaintiff's hard work and dedication, Defendants Birrane and Evans gave Plaintiff a "spot award," of a "free night out on the town" at MLF's expense.  Defendant Birrane was the one who notified Plaintiff of this award and told him that it was a "small token" of the firm's appreciation.

25.     In April/May 2008, Defendants Birrane and Evans invited Plaintiff to join the MLF management team, an internal leadership committee responsible for the creation and implementation of the Company's first "core value" initiative.

26.     In June of 2008, Defendant Birrane nominated Mr. Strisik for an MLF "core value" Professionalism Award.  In her June 20, 2008 nomination email to Defendant Evans, Defendant Birrane made the following statements about Plaintiff:

(a)     "His demeanor and mode of interaction are appropriate, respectful and effective."

(b)     "He projects the critical attributes of his profession and position – skill, thoughtful analysis, creative problem solving, trustworthiness."

(c)     "He is reliable and consistent."

(d) "[H]e is invaluable to this department and his good work has moved us quickly through some of the biggest challenges."

27. In September of 2008, Defendants Birrane and Evans nominated Mr. Strisik for the Washington Metropolitan Area Association of Corporate Counsel's Outstanding In-House Counsel award.

28. In October 2008, Mr. Strisik and his team were nominated for an MLF award for Pro-Activity and Continuous Improvement.

29. Mr. Strisik is a recovering alcoholic and a member of Alcoholics Anonymous ("AA"). Mr. Strisik requires ongoing treatment for his alcoholism through AA meetings and counseling.

30. In June of 2008, Mr. Strisik began voluntary, outpatient treatment for alcoholism. At the time, Mr. Strisik suffered from and was diagnosed with an addiction to and dependence on alcohol. While his alcoholism did not interfere with his ability to perform the essential functions of his job at MLF, it substantially limited Mr. Strisik in one or more major life activities, including, but not limited to, sleeping, socializing and caring for his family.

31. Mr. Strisik did not inform Defendant Birrane or anyone else at MLF that he had been diagnosed with and suffered from alcoholism or that he had submitted himself to outpatient treatment for same.

32. With the assistance of the outpatient treatment and medication, Plaintiff was able to attain sobriety.

33. In late December 2008, Defendant Birrane praised Mr. Strisik for his work performance in his initial year at MLF and informed Mr. Strisik that he was going to receive a 4% merit increase.

34. Upon information and belief, this 4% increase was among the highest given to any employee in the legal department for calendar year 2008.

35. On December 1, 2008, Plaintiff suffered a relapse outside of work and began consuming alcohol again. While Plaintiff was able to regain his sobriety on December 15, 2008, he was advised by medical professionals that he had to obtain inpatient treatment for his alcoholism in order to attain lasting sobriety.

36. Accordingly, in February of 2009, Mr. Strisik attempted to exercise his rights under the FMLA by taking job protected leave to obtain treatment for his condition.

37. On February 8, 2009, Mr. Strisik called Defendant Birrane and informed her that he had been advised by his doctors that he needed to take a medical leave of absence from work to be treated at Father Martin's Ashley, a drug and alcohol addiction rehabilitation center in Havre de Grace, Maryland.

38. Defendant Birrane reacted very badly to this disclosure, saying "Oh yeah, I know that place." She then began telling Mr. Strisik about problems she and her sister had experienced living and dealing with their alcoholic father.

39. Defendant Birrane then berated Plaintiff and told him, "Go away and take time to learn what it means to be a dry drunk!"

40. Mr. Strisik was shocked and disturbed by Defendant Birrane's reaction to his request for medical leave and became very concerned about this job status at MLF.

41. However, Mr. Strisik knew that maintaining his sobriety required inpatient treatment and he checked himself into Father Martin's Ashley for a 30-day treatment program.

42. While he was away at Father Martin's Ashley, Defendant Birrane called Plaintiff's home and spoke with Plaintiff's wife.

43. In the course of this telephone call, Defendant Birrane told Mr. Strisik's wife that she was "concerned" about Mr. Strisik and wanted to know whether Mr. Strisik intended to return to work.

44. Plaintiff's wife told Defendant Birrane that, as far as she knew, Mr. Strisik loved his job at Maple Life and had every intention of returning to work at the end of his treatment.

45. Defendant Birrane proceeded to say that Mr. Strisik should really "think about whether he wanted to return to Maple as an attorney" and "if you were to ask around here, people would tell you that Marshall is not happy with his job."

46. Plaintiff's wife became extremely upset and terminated the telephone call. She then recounted to Plaintiff at Father Martin's Ashley what Defendant Birrane said.

47. Mr. Strisik, who was in treatment at the time, also became upset and fearful for his job. The prospect of losing his job was emotionally distressing, negatively impacted his treatment at Father Martin's Ashley, and caused him to return to work on March 12, 2009, rather than extend his treatment further.

48. Plaintiff's fears and concerns about Defendant Birrane's change in attitude towards him upon learning that he was an alcoholic were borne out when he returned to work on March 12, 2009.

49. Unfortunately, Defendant Birrane had already taken measures to force Plaintiff out of his job at MLF while he was out on FMLA leave.

50. For instance, Defendant Birrane stripped Plaintiff of his managerial duties, reassigning Mr. Brown, Ms. Chai and Ms. Miller to report to Ms. Lori Booker who, prior to Plaintiff's FMLA leave, had been Plaintiff's peer.

51. Ms. Booker, a CPA and estate planning attorney, had no prior work experience in compliance matters and/or regulatory affairs.

52. When Mr. Strisik expressed his concerns about this change to MLF's Human Resource Manager, Dianne Spivack, Ms. Spivack told Plaintiff "don't beat your head against the wall" and then sent Plaintiff an e-mail with the following message: "Marshall, you may find this helpful  http://compliancex.com"

53. The website address that Ms. Spivack sent to Plaintiff was for a job search engine for legal and compliance professionals.

54. On March 20, 2009, Defendant Birrane called Mr. Strisik into a meeting, allegedly to provide him with his 2008 Annual Review.

55. During this meeting Defendant Birrane gave Mr. Strisik a written addendum to his annual review that falsely criticized Plaintiff's work performance in various areas.  This addendum was created on March 20, 2009 – after Mr. Strisik returned from FMLA leave – and purported to address issues that came to Defendant Birrane's attention during Plaintiff's absence from work.

56. Defendant Birrane then informed Mr. Strisik that he should prepare his "exit strategy" from MLF, based upon "differing attitudes and philosophies" between Plaintiff and Defendant Birrane.

57. On March 23, 2009, Defendant Birrane called Plaintiff into her office again and told Plaintiff that he was not to initiate or have any communications with anyone outside of MLF without first clearing it through her and similarly should not provide information to anyone within MLF without first discussing the issue with her.  Defendant Birrane told Mr. Strisik that

she was going to "micro-manage" him going forward and that he should expect this to be the routine from now on.

58.    On March 25, 2009, Plaintiff provided Defendant Birrane with a written response to his 2008 Annual Review. In addition to refuting the false performance criticisms made by Defendant Birrane, Mr. Strisik also stated that he believed Defendant Birrane was discriminating and retaliating against him because he has a disability and because he took FMLA leave.

59.    Defendant Birrane became infuriated and called Mr. Strisik into her office. She berated and threatened Plaintiff, telling him that she was going to "fire up" outside counsel to "handle this situation."

60.    On March 26, 2009, Defendant Birrane again confronted Mr. Strisik and continued to threaten him, saying that his complaint about discrimination and retaliation was a "crock of shit" and that she would be managing him "very closely."

61.    On April 1, 2009, Defendant Birrane announced Ms. Booker's promotion to Deputy General Counsel. In this new role, Ms. Booker was responsible for day-to-day oversight and administration of work in the legal department; Defendant Birrane also announced that, effective "immediately," all MLF requests for legal review or advice were to be directed to Ms. Booker.

62.    Prior to this time, Plaintiff was the "go to" attorney at MLF to field requests for legal review and/or advice.

63.    This announcement effectively sealed Mr. Strisik's marginalization within the organization. It also required Plaintiff to report directly to Ms. Booker – a former peer – rather than Defendant Birrane.

64. On April 8, 2009, during a department meeting, Defendant Birrane further humiliated Plaintiff by announcing the redistribution of most of his remaining duties.

65. Defendant Birrane also hired a contract attorney to take over a targeted market conduct examination in Florida. Prior to his FMLA leave and complaint of discrimination, this would have been an assignment managed by Plaintiff.

66. In response, on or about April 14, 2009, Plaintiff filed a complaint of discrimination and retaliation with Human Resources.

67. Nothing was done to stop Defendant Birrane's discriminatory and retaliatory conduct.

68. In fact, the discrimination and retaliation only intensified. Defendant Birrane refused to communicate at all with Plaintiff. Through Ms. Booker, Defendant Birrane began establishing arbitrary and unreasonable deadlines for Plaintiff's assignments and refused to provide necessary clarification and explanation to enable Plaintiff to complete the same.

69. Ms. Booker twice confided in Mr. Strisik, telling him that she was feeling "pressured" by Defendant Birrane to take action against him.

70. On or about April 24, 2009, Eric Lund, MLF's Senior Vice President of Marketing, came to Mr. Strisik in confidence and recounted to him that he had approached Defendant Birrane to ask whether he (Mr. Lund) could recommend Plaintiff on a professional networking website and that Defendant Birrane had responded, "No." Mr. Lund then told Plaintiff that Defendant Birrane had launched into a "15 minute tirade" about Mr. Strisik's alcoholism and how long she believed it would take for Plaintiff to "function in a work environment again."

71. In May and June 2009, Mr. Strisik began being systematically excluded from department meetings, distribution lists and even the legal department organizational chart filed with the various state insurance regulators.

72. Unable to obtain any assistance from Human Resources, on June 11, 2009, Plaintiff appealed to Defendant Evans (Defendant Birrane's boss), complaining of Defendant Birrane's discrimination and retaliation.

73. Mr. Strisik's working conditions only worsened after he complained to Defendant Evans.  His responsibilities were downgraded even further, Ms. Booker ceased communicating with him except by e-mail, and, upon information and belief, a contract attorney was hired to perform compliance work previously done by Plaintiff.

74. Mr. Strisik also continued to be excluded from meetings.

75. On September 1, 2009, Plaintiff filed a charge of discrimination and retaliation against MLF with the EEOC.

76. On September 3, 2009, Ms. Booker purported to discuss with Plaintiff his third quarter 2009 annual review, criticizing him for his work hours, alleged errors and complaints about the low-level nature of his assignments.

77. On September 4, 2009, Plaintiff received a "Formal Reprimand" from Defendant Evans for alleged failure to report a security breach.

78. On September 30, 2009, Plaintiff received a formal third quarter 2009 performance review, criticizing his work product, falsely stating that Plaintiff did not work independently and lacked the ability to assume any managerial responsibilities.

79. On October 12, 2009, Defendant Evans and an MLF employee, Gordon Taylor, came to Plaintiff's office.  Defendant Evans summarily discharged Plaintiff.

80. Mr. Strisik was ordered to pack his things and leave MLF offices immediately.

81. Defendants unlawfully discriminated against Plaintiff regarding compensation, terms, conditions and privileges of employment, harassed him, and unlawfully discharged him because of his disability, within the meaning of applicable law, and because Mr. Strisik exercised his protected rights under the FMLA. Defendants unlawfully retaliated against Mr. Strisik for objecting to, opposing and complaining about unlawful discrimination and harassment and for engaging in protected activities.

82. Defendants unlawfully discriminated against Mr. Strisik, harassed him, retaliated against him, and discharged him, because of his disability, in violation of the FMLA, and because he engaged in protected activities.

83. Defendants' conduct constituted unlawful discrimination and retaliation. Defendants unlawfully discriminated against Plaintiff regarding compensation, terms, conditions and privileges of employment, and employment opportunities, retaliated against him, and unlawfully discharged him, in violation of applicable law.

84. Defendants' proffered reason for the challenged conduct was a pretext for unlawful discrimination, harassment and retaliation.

85. Plaintiff engaged in protected activities within the meaning of applicable law. Plaintiff opposed, objected to and complained about unlawful conduct. However, Defendants failed to take appropriate remedial action and failed to put an end to the unlawful conduct and it continued throughout his employment.

86. Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination, harassment and retaliation.

87. As a result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, among other items, substantial damages. Plaintiff is entitled to the damages and other relief sought herein and seeks all available damages and relief under applicable law.

88. Defendants are liable for their unlawful conduct against Plaintiff.

## COUNT ONE

### (Americans With Disabilities Act – Against Defendant MLF)

89. Plaintiff repeats and realleges every allegation in paragraphs 1 through 88 of this Complaint with the same force and effect as though fully set forth herein.

90. This Count is brought under the ADA, 42 U.S.C. § 12101 et seq. and reference is made to the ADA in its entirety, and to 42 U.S.C. §§ 12102, 12111, 12112, 12117 and to 42 U.S.C. 2000e-5.

91. At all relevant times, Plaintiff was an employee and person within the meaning of the ADA.

92. At all relevant times, MLF was and is an employer within the meaning of the ADA.

93. Under the ADA, the term disability means, with respect to an individual: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the ADA, because: (1) he has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) he has a record of such an impairment; and/or (3) he is regarded as having such an impairment. See, e.g., 42 U.S.C. § 12102(2).

94.     Defendant MLF, by and through Defendants Birrane, Evans and others, committed unlawful employment practices and discriminated against Plaintiff because of a disability, regarding compensation, terms, conditions and privileges of employment, and employment opportunities, and unlawfully discharged him because of a disability.  In addition, Defendants unlawfully retaliated against Plaintiff and unlawfully discharged him for engaging in protected activity, in violation of the ADA.

95.     Defendant MLF unlawfully discharged Plaintiff in violation of the ADA.

96.     Defendant MLF's conduct, as alleged herein, constituted unlawful employment practices, unlawful discrimination on the basis of a disability, and unlawful retaliation, in violation of the ADA.

97.     Defendant MLF's unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination and retaliation.

98.     As a result of Defendant MLF's unlawful employment practices and unlawful discrimination, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages and bonuses; (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys' fees and costs.  Plaintiff is entitled to reinstatement and to recover monetary and other damages, punitive damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs, from MLF, under the ADA.

99.     As a result of Defendant MLF's unlawful conduct, Plaintiff has suffered, and continues to suffer, among other items, lasting and irreparable injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering,

inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation. Plaintiff is entitled to recover damages for such injuries from MLF.

## COUNT TWO

### (FMLA – Against All Defendants)

100. Plaintiff repeats and realleges every allegation in paragraphs 1 through 99 of this Complaint with the same force and effect as though fully set forth herein.

101. This Count is brought under the FMLA, 29 U.S.C. § 2601 et seq. and reference is made to the FMLA in its entirety and to 29 U.S.C. §§ 2611, 2612, 2614, 2615, and 2617.

102. At all relevant times, Plaintiff was an eligible employee and Plaintiff was and is a person within the meaning of the FMLA.

103. MLF was and is an employer within the meaning of the FMLA. Defendants Birrane and Evans were and are an employer within the meaning of the FMLA, which defines the term employer to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."

104. At all relevant times, Plaintiff was qualified for his position with MLF.

105. Plaintiff was entitled to FMLA leave to care for his own serious health condition and attempted to exercise his FMLA rights, and was entitled to use FMLA leave.

106. Under the FMLA, Plaintiff was entitled to utilize his FMLA leave without any adverse employment action or adverse changes to the terms and conditions of his employment.

107. Defendant Birrane unlawfully interfered with Plaintiff's attempts to exercise his rights under the FMLA and unlawfully restrained Plaintiff from taking job-protected leave under the FMLA.

108. In addition, Defendants unlawfully discharged Plaintiff because he exercised his FMLA rights and Defendants unlawfully discharged Plaintiff in violation of the FMLA.

109. Defendants unlawfully interfered with, restrained and/or denied Plaintiff the exercise of his rights or the attempt to exercise his rights under the FMLA, in violation of the FMLA.

110. Defendants unlawfully discriminated against and unlawfully discharged Plaintiff for exercising his rights or attempting to exercise his rights under the FMLA and/or for opposing practices made unlawful by the FMLA, in violation of the FMLA.

111. Defendants' proffered reasons for the challenged conduct are a pretext for unlawful employment practices, unlawful discrimination and unlawful retaliation, in violation of the FMLA.

112. Defendants' unlawful employment practices, unlawful discrimination and unlawful retaliation violated the FMLA.

113. As a result of Defendants' unlawful employment practices and unlawful discrimination, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages and bonuses; (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys' fees and costs. Plaintiff is entitled to reinstatement and to recover monetary and other damages, liquidated damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs, from Defendants, under the FMLA.

## COUNT THREE

### (MCHRA – Against Defendant MLF)

114. Plaintiff repeats and realleges every allegation in paragraphs 1 through 113 of this Complaint with the same force and effect as though fully set forth herein.

115. This Count is brought under the Montgomery County Code, Human Rights and Civil Liberties, Chapter 27, § 27-1 et seq. (the "MCHRA").

116.    At all relevant times, Plaintiff was an employee and person with a disability/handicap within the meaning of the MCHRA.

117.    At all relevant times, MLF was and is an employer within the meaning of the MCHRA.

118.    Defendant MLF, by and through Defendants Birrane, Evans and others, committed unlawful employment practices and discriminated against Plaintiff because of a disability, regarding compensation, terms, conditions and privileges of employment, and employment opportunities, and unlawfully discharged him because of a disability.  In addition, Defendants unlawfully retaliated against Plaintiff and unlawfully discharged him for engaging in protected activity, in violation of the MCHRA.

119.    Defendants unlawfully discharged Plaintiff in violation of the MCHRA.

120.    Defendants' conduct, as alleged herein, constituted unlawful employment practices, unlawful discrimination on the basis of a disability, and unlawful retaliation, in violation of the MCHRA.

121.    Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination and retaliation.

122.    As a result of Defendants' unlawful employment practices and unlawful discrimination, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages and bonuses; (ii) lost back pay; (iii) lost front pay; (iv) lost benefits; (v) lost interest; (vi) lost pension and retirement earnings; and (vii) attorneys' fees and costs.  Plaintiff is entitled to reinstatement and to recover

monetary and other damages, punitive damages, interest (pre-judgment and post-judgment), and attorneys' fees and costs, from MLF, under the MCHRA.

123.　　As a result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, among other items, lasting and irreparable injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation.  Plaintiff is entitled to recover damages for such injuries from MLF.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment as follows:

(A)　　On Count One, award Plaintiff the amount of wages, salary, employment benefits and other compensation, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost (pre-judgment and post-judgment) as a result of Defendants' discrimination, retaliation and reprisals;

(B)　　On Count One, award Plaintiff consequential damages for losses resulting from Defendants' acts of discrimination, retaliation and reprisals;

(C)　　On Count One, award Plaintiff compensatory damages for emotional distress, suffering, humiliation and damage to Plaintiff's reputation and career;

(D)　　On Count One, award Plaintiff punitive damages;

(E)　　On Count One, award Plaintiff the cost of this action, together with reasonable attorneys' fees, and litigation/legal costs;

(F)　　On Count Two, award Plaintiff the amount of wages, salary, employment benefits and other compensation, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost (pre-judgment and post-judgment) as a result of Defendants' unlawful discrimination, unlawful employment practices and unlawful retaliation;

    (G)    On Count Two, award Plaintiff liquidated damages;

    (H)    On Count Two, award Plaintiff the cost of this action, together with attorneys' fees;

    (I)    On Count Three, award Plaintiff the amount of wages, salary, employment benefits and other compensation, including without limitation back pay, front pay, bonuses, benefits, pension and retirement earnings, and interest lost (pre-judgment and post-judgment) as a result of Defendants' discrimination, retaliation and reprisals;

    (J)    On Count Three, award Plaintiff consequential damages for losses resulting from Defendants' acts of discrimination, retaliation and reprisals;

    (K)    On Count Three, award Plaintiff compensatory damages for emotional distress, suffering, humiliation and damage to Plaintiff's reputation and career;

    (L)    On Count Three, award Plaintiff punitive damages;

    (M)    On Count Three, award Plaintiff the cost of this action, together with reasonable attorneys' fees, and litigation/legal costs;

    (N)    Grant Plaintiff such other and further relief as may be necessary and proper.

## JURY DEMAND

Plaintiff demands a jury trial for all issues so triable.

                              **Respectfully submitted,**

                              **KELLEY DRYE & WARREN LLP**

                    **By:  _____/s/_____**
                          **Ira T. Kasdan, Bar # 26942**
                          **KELLEY DRYE & WARREN LLP**
                          **3050 K Street, N.W., Suite 400**
                          **Washington, D.C. 20007**
                          **Phone:     (202) 342-8400**
                          **Facsimile:  (202) 342-8451**
                          **Email:  ikasdan@kelleydrye.com**

**Of Counsel**
**Jean Y. Park (Pro Hace Vice Admission Pending)**
**101 Park Avenue**
**New York, New York 10178**
**(212) 808-7800**
**(212) 808-7897 (FAX)**
**Email: jpark@kelleydrye.com**

                              **Attorneys for Plaintiff**

**Dated:  December 28, 2010**